U S ~6

JANET M. HEROLD
Regional Solicitor
SUSAN SELETSKY
Counsel for FLSA
JEREMIAH E. MILLER (WSBA 40949)
Senior Trial Attorney
GRACE A. KIM (CSBN 247456)
Trial Attorney
NATALIE NARDECCHIA (CSBN 246486)
Trial Attorney
United States Department of Labor
Office of the Solicitor
350 S. Figueroa St., Suite 370
Los Angeles, CA 90071
Phone (213) 894-3384
Fax (213) 894-2064
Nardecchia.Natalie@dol.gov

Attorneys for Plaintiff, Thomas E. Perez,
Secretary, U.S. Department of Labor

## UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> SHIPPERS TRANSPORT EXPRESS, INC., a corporation, <br><br> Defendant. | HON. BEVERLY REID O'CONNELL <br><br> Case No. 2:13-CV-04255-BRO-PLA <br><br> **CONSENT JUDGMENT & ORDER** |

Plaintiff, THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor ("Plaintiff" or the "Secretary"), and Defendant Shippers Transport Express, Inc. ("Defendant" or "Shippers") have agreed to resolve the matters in controversy in this civil action and consent to the entry of this consent judgment ("Consent Judgment" or "Judgment") in accordance herewith.

## I. **ADMISSIONS BY THE PARTIES:**

A. The Secretary has filed a Complaint alleging that Defendant violated provisions of Sections 6, 11(c), 15(a)(2) and (5) of the Fair Labor Standards Act of 1938, as amended ("FLSA" or the "Act"), 29 U.S.C. §§ 206, 211(c), 215(a)(2) and (5).

B. Defendant acknowledges receipt of a copy of the Secretary's Complaint.

C. Defendant agrees herein to resolve all allegations of the Secretary's Complaint.

D. Defendant admits that the Court has jurisdiction over the parties and subject matter of this civil action and that venue lies in the district court for the Central District of California.

E. Defendant and the Secretary agree to the entry of this Consent Judgment without contest.

F. Defendant acknowledges that Defendant and any individual or entity acting on its behalf or at its direction (including but not limited to Edward DeNike, Defendant's President, as well as Defendant's management personnel at its Oakland facility, including General Manager Guy Sanderson, Operations Manager Maria Banales, Ja'Quita Carter, Lavita Jackson, and Dispatchers Kelvin Pham and Byron Trujillo) have notice of, and understand, the provisions of this Consent Judgment.

G. Defendant admits that it has been a trucking and freight transportation company that arranges for and transports containerized goods arriving and departing on ocean vessels via ports, including the Port of Oakland.

H. Defendant admits that it employed drivers who leased trucks from Defendant and who then were engaged in its transportation business through Defendant's dispatchers transporting, shipping, and/or delivering goods to and from the

Port of Oakland ("Drivers").  Defendant admits that since at least August 20, 2009, the truck drivers with Defendant were and are engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

I. Defendant admits that since at least August 20, 2009, it has been a California corporation engaged in related activities performed through unified operation or common control for a common business purpose in California, and has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

J. Defendant admits that since at least August 20, 2009, it has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(s)(1)(A) of the FLSA, 29 U.S.C. § 203(s)(1)(A); in that it has employees who have been engaged in commerce or the production of goods for commerce, or in handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

K. Defendant admits that on at least some occasions, it has misclassified Drivers as independent contractors rather than as employees ("Misclassified Employees").

L. Defendant understands and expressly acknowledges that the provisions and safeguards guaranteed under the FLSA to employees, including but not limited to those found in Sections 6, 11(c), 15(a)(2), 15(a)(3), and 15(a)(5), apply to the Misclassified Employees.

M. Defendant admits that on at least some occasions it has violated Sections 6 and 15(a)(2) of the FLSA by paying the Misclassified Employees wages at rates less than the applicable federal minimum wage in workweeks when said

employees were engaged in commerce or in the production of goods for commerce or were employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the FLSA.

N.  Defendant admits that on at least some occasions it has violated Sections 11(c) and 15(a)(5) of the FLSA by failing to make, keep and preserve records of the Misclassified Employees and of the wages, hours, and other conditions and practices of employment maintained by them as prescribed by the regulations found in 29 C.F.R. Part 516 that are issued, and from time to time amended, pursuant to Section 11(c) of the FLSA.

O.  Defendant admits and agrees that it will reclassify all Misclassified Employees and any other present or future Drivers at its Oakland facility (or any future facility should the current Oakland facility cease operations), as well as all drivers at Defendant's other California facilities (including its facility located in Carson, California, or any future facility should the current Carson facility cease operations), as employees by no later than sixty (60) calendar days from the date of entry of this Consent Judgment.

P.  Defendant understands and expressly acknowledges that demanding or accepting any of the monies due to any employees under the terms of this Consent Judgment, threatening any employee for accepting monies due under this Consent Judgment, or threatening any employee for exercising any of his or her rights under the FLSA is specifically prohibited and may subject Defendant to equitable and legal damages, including punitive damages and civil contempt.

Q.  Defendant understands and expressly acknowledges that it is "unlawful for any person…to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or

caused to be instituted any proceeding under [the FLSA], or has testified or is about to testify in any such proceeding…" See 29 U.S.C. § 215(a)(3). Defendant understands and expressly acknowledges that it is illegal to retaliate in any manner against any employee, including the Drivers, because he or she has participated in the instant proceedings by *inter alia* talking to the Secretary's representatives, providing deposition or trial testimony, or in any way pursuing his or her rights under the FLSA. Defendant further understands and expressly acknowledges that taking any retaliatory actions against any employee in violation of the FLSA and the express terms of this Consent Judgment may subject Defendant to equitable and legal damages, including punitive damages and civil contempt.

Having considered the submissions made in connection with the proposed settlement, the representations, arguments, recommendation of counsel for the parties, and the requirements of law, the Court hereby makes the following findings of fact and conclusions of law in support of its Final Order and Judgment approving the Consent Judgment.

## II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A. The Secretary has filed a Complaint alleging that Defendant violated provisions of Sections 6, 11(c), 15(a)(2) and (5) of the Fair Labor Standards Act of 1938, as amended ("FLSA" or the "Act"), 29 U.S.C. §§ 206, 211(c), 215(a)(2) and (5).

B. Defendant has received a copy of the Secretary's Complaint.

C. Defendant has withdrawn any defenses to the Secretary's Complaint directly inconsistent with this consent decree.

D. This Court has jurisdiction over the parties and subject matter of this civil action, and venue lies in the district court for the Central District of California.

E. Defendant and the Secretary have agreed to the entry of this Consent Judgment without contest.

F. Defendant and any individual or entity acting on its behalf or at its direction (including but not limited to Edward DeNike, Defendant's President, as well as Kevin Baddeley, Defendant's Carson Manager, and Defendant's personnel at its Oakland facility, including General Manager Guy Sanderson, Operations Manager Maria Banales, Ja'Quita Carter, Lavita Jackson, Yard Manager Tony Banales, and Dispatchers Kelvin Pham and Byron Trujillo) have notice of, and understand, the provisions of this Consent Judgment.

G. Since at least August 20, 2009, Defendant has been a trucking and freight transportation company that arranges for and transports containerized goods arriving and departing on ocean vessels via ports, including the Port of Oakland.

H. At times relevant, Defendant has employed drivers who leased trucks from Defendant and who have been engaged in its transportation business, transporting, shipping, and/or delivering goods to and from the Port of Oakland ("Drivers").  Since at least August 20, 2009, the Drivers were and are engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

I. Since at least August 20, 2009, Defendant has been engaged in related activities performed through unified operation or common control for a common business purpose, and has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

J. Since at least August 20, 2009, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(s)(1)(A) of the FLSA, 29 U.S.C. § 203(s)(1)(A); in that it has

employees who have been engaged in commerce or the production of goods for commerce, or in handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

K. At some times relevant, Defendant has misclassified the Drivers as independent contractors rather than as employees ("Misclassified Employees").

L. Since at least August 20, 2009, the provisions and safeguards guaranteed under the FLSA to employees, including but not limited to those found in Sections 6, 11(c), 15(a)(2) and 15(a)(5), apply to the Misclassified Employees.

M. Defendant has on at least some occasions violated Sections 6 and 15(a)(2) of the FLSA by paying the Misclassified Employees wages at rates less than the applicable federal minimum wage in workweeks when said employees were engaged in commerce or in the production of goods for commerce or were employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the FLSA.

N. Defendant has violated Sections 11(c) and 15(a)(5) of the FLSA by failing to make, keep and preserve records of the Misclassified Employees and of the wages, hours, and other conditions and practices of employment maintained by them as prescribed by the regulations found in 29 C.F.R. Part 516 that are issued, and from time to time amended, pursuant to Section 11(c) of the FLSA.

O. Demanding or accepting any of the monies due to any employees under the terms of this Consent Judgment, threatening any employee for accepting monies due under this Consent Judgment, or threatening any employee for exercising any of his or her rights under the FLSA is specifically prohibited

**CONSENT JUDGMENT & ORDER**                    **Page 7 of 33**

and may subject Defendant to equitable and legal damages, including punitive damages and civil contempt.  Said actions could also subject Defendant to potential criminal prosecution.

P.  Discharging, threatening to discharge, reducing a work schedule, or in any other manner discriminating against any employee as a result of this litigation or an employee's participation herein, is specifically prohibited and may subject Defendant to equitable and legal damages, including punitive damages and civil contempt.

## III.  **JUDGMENT**

Therefore, upon motion of the attorneys for the Secretary, and for cause shown,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that pursuant to Section 17 of the FLSA, Defendant Shippers Transport Express, Inc., its officers, agents, servants, employees , successor companies, and all persons in active concert or participation, including but not limited to Guy Sanderson, Kevin Baddeley, and Edward DeNike with them be, and they hereby are, permanently enjoined and restrained from violating the provisions of the FLSA, in any of the following manners:

1.  Defendant shall not, contrary to the FLSA, misclassify the Misclassified Employees and any other present or future Drivers at its Oakland facility (or any future facility should the current Oakland facility cease operations), as well as all Drivers at Defendant's other California facilities (including its facility located in Carson, California, or any future facility should the current Carson facility cease operations) as independent contractors or otherwise as non-employees, but shall treat and classify said individuals as employees who shall enjoy all protections and safeguards guaranteed under the FLSA, including but not limited to those found in Sections 6, 11(c), 15(a)(2), 15(a)(3)and 15(a)(5) of the Act.

2. Defendant shall properly reclassify all Misclassified Employees and any other present or future Drivers at its Oakland facility (or any future facility should the current Oakland facility cease operations), as well as all Drivers at Defendant's other California facilities (including its facility located in Carson, California, or any future facility should the current Carson facility cease operations), as employees by no later than sixty (60) calendar days from the date of entry of this Consent Judgment ("Reclassification Date") (the period from August 20, 2009 to the Reclassification Date is hereafter referred to as the "Subject Period").

3. Defendant shall not, contrary to Sections 6 and 15(a)(2) of the FLSA, pay any of its employees who in any workweek are engaged in commerce or in the production of goods for commerce or who are employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the FLSA, wages at a rate less than $7.25 per hour (or at a rate less than such other applicable minimum rate as may hereinafter be established by amendment to the FLSA).

4. Defendant shall not, contrary to Sections 11(c) and 15(a)(5) of the FLSA fail to make, keep and preserve records of their employees and of the wages, hours, and other conditions and practices of employment maintained by them as prescribed by the regulations issued, and from time to time amended, pursuant to Section 11(c) of the FLSA and found in 29 C.F.R. Part 516.

5. Defendant shall make, keep, and preserve accurate records of the wages, hours, and other work conditions and practices of each and every individual who performs any work for Defendant at its Oakland facility (or any future facility should the current Oakland facility cease operations).

6.  Defendant shall not, contrary to Section 15(a)(3) of the FLSA discharge, threaten to discharge, lay off, refuse to provide work, reduce the work schedule or wages, intimidate, provide negative employment references or take any steps to interfere with an employee's application to work for another employer, or in any other manner discriminate against any employee as a result of this litigation or because such employee has filed any complaint under or related to the FLSA, has spoken to the Secretary's representatives (or provided a statement) in connection with this litigation, has provided deposition testimony in this litigation, and/or has been named as a witness on the Secretary's witness list.  Defendant shall not terminate, refuse to provide work for, reduce the work, or lay off any employee as a result of this litigation or employee actions to enforce rights protected by the FLSA.  In accordance with and in furtherance of the requirements of this paragraph, Defendant:

A)  Shall post the daily dispatch log, each day, in a prominent location at its Oakland facility, and shall identify the Driver to whom each dispatched load or delivery was assigned;

B)  Shall post the current Driver rate sheet, showing the rate for each delivery or load, in a prominent location at its Oakland facility and shall provide a copy to each of its current drivers;

C)  Shall agree to provide neutral employment references for all Driver employees upon request – and shall not take any steps to interfere with any Drivers' application to work for another company; and

D)  Shall not offer to pay Drivers hourly or piece rates that are intentionally low enough to discourage Drivers from continuing to work for Defendant or constructively terminate them.

7. **IT IS FURTHER ORDERED** that Defendant shall make payments to the Wage Hour Division of the United States Department of Labor of **$94,293.64,** which constitutes unpaid minimum wage compensation and pertinent reimbursements for weeks during which minimum wage violations were found due for the Subject Period to those current and former employees of Defendant named in **Exhibit A**, attached hereto and made a part hereof ("Backwage Calculation"), plus an additional equal amount of **$94,293.64** as statutorily authorized liquidated damages ("Liquidated Damages"), for a total of **$188,587.28**.

8. Defendant shall not request, solicit, suggest, or coerce, directly, or indirectly, any employee to return or to offer to return to Defendant or to someone else for Defendant, any monies in the form of cash, check, or any other form, for wages previously due or to become due in the future to said employee under the provisions of this Consent Judgment or the FLSA; nor shall Defendant accept, or receive from any employee, either directly or indirectly, any monies in the form of cash, check, or any other form, for wages heretofore or hereafter paid to said employee under the provisions of this Consent Judgment or the FLSA; nor shall Defendant withhold work or wages, discharge, threaten to discharge, or in any other manner discriminate, solicit or encourage anyone else to discriminate, against any such employee because such employee has received or retained monies due to him or her from Defendant under the provisions of this Consent Judgment or the FLSA.

**FURTHER, JUDGMENT IS HEREBY ENTERED**, pursuant to Section 6 above in accordance with Section 16(c) of the FLSA, in favor of the Secretary and against Defendant in the total amount of $188,587.28.

9.   Defendant shall pay to the Secretary the net amount of back wages due from the total amount of the Backwage Calculation, which represents the unpaid gross minimum wage compensation, and pertinent reimbursements for weeks during which minimum wage violations were determined for the Subject Period to the current and former employees of Defendant as set forth in Exhibit A, attached hereto and made a part hereof.  (See Section 7.)

10. Pursuant to authority expressly provided in Section 16 of the FLSA, 29 U.S.C. § 216, Defendant shall further pay to the Secretary the additional equal sum of the Backwage Calculation as Liquidated Damages, hereby found to be due for the Subject Period to the current and former employees named in Exhibit A, attached hereto and made a part hereof.  (See Section 7.)

11. The monetary provisions of this Consent Judgment shall be deemed satisfied where Defendant complies with the following payment provisions:

a.  Within sixty (60) calendar days of the entry of this Consent Judgment, Defendant shall deliver to the Wage and Hour Division, United States Department of Labor, Attn: Susana Blanco, 90 Seventh Street, Suite 12-100, San Francisco, California, 94103, a schedule containing: (1) the employer's name, employer identification number, employer addresses and telephone number, and (2) the names, last known home addresses, Social Security numbers, home telephone numbers, mobile telephone numbers, gross amount of back wages, amounts of legal deductions for Social Security and withholding taxes thereon, and the resulting gross and net amount of back wages for each Driver listed in the attached Exhibit A.  Defendant shall be responsible for determining the employer and employee portions of each employee's legal deductions for Social Security and withholding taxes thereon from the amounts to be paid to the employees named in the attached

Exhibit A, and for timely remitting said deductions to the appropriate governmental agencies entitled thereto.

b. Within sixty (60) calendar days of entry of this Consent Judgment, Defendant shall initiate repayment of the Backwage Calculation and Liquidated Damages described supra by delivering three checks per employee listed in Exhibit A to the DOL.

i. The first check will be in the amount of total net back wages due to said employee and shall have "Net BW Due" written thereon.

ii. The second check will be in the amount of the total reimbursements due to said employee and shall have "Reimbursements" written thereon.

iii. The third check will be for the full amount of liquidated damages due to said employee as set forth in the attached Exhibit A and shall have "Liquidated Damages" written thereon.

iv. All checks shall include the firm name of "Shippers Transport Express" and shall be made payable to the order of the employee and "Wage & Hour Div., Labor." For example, payment to John Employee would be payable to "John Employee or Wage & Hour Div., Labor." Defendant shall deliver these payments to Wage and Hour Division, United States Department of Labor, 90 Seventh Street, Attn: Susana Blanco, Suite 12-100, San Francisco, California, 94103.

12. In the event of a default in the timely making of the payments specified in this Consent Judgment, the full gross amount outstanding due under this Consent Judgment, plus post-judgment interest at the rate of 10% per year from the date of this Consent Judgment until the amount of this Consent Judgment is paid in

full, shall become immediately due and payable directly to the U.S. Department of Labor by certified check to the Wage and Hour Division ("Wage and Hour").  For the purposes of this paragraph, a "default" is deemed to occur if payment is not delivered within five (5) calendar days of the due date.

13. Upon receipt of the payments detailed <u>supra</u>, the Secretary shall distribute said payments to the persons named in the attached Exhibit A, or to their estates if that be necessary, in his sole discretion, and any monies not so paid within a period of three (3) years from the date of its receipt, because of an inability to locate the proper persons or because of their refusal to accept it, shall be then deposited in the Treasury of the United States, as miscellaneous receipts, pursuant to 29 U.S.C. § 216(c).

14. Within thirty (30) calendar days of the date of entry of this Consent Judgment, Defendant shall provide each of their employees with a copy of the notice of rights, attached as **<u>Exhibit B</u>**, which summarizes the terms of this Consent Judgment and provides direct guidance from the U.S. Department of Labor regarding employees' rights, including protection from retaliation, under the FLSA ("Notice of Rights").  Exhibit B includes English and Spanish versions of the Notices of Rights.  In the event Shippers is informed in writing by an employee or the DOL that the native language of any employee of Defendant is a language other than English and Spanish, Defendant shall ensure that the Notice of Rights is properly translated into that language within a week. Within the time period prescribed above, Defendant shall take the following steps to help ensure that all of Defendant's employees are aware of their rights under the FLSA:

a. Defendant shall post a copy of Exhibit B in a prominent location at its current Oakland facility (for example, near the facility's front door, near the

dispatch window), and Defendant shall do the same at any future facility should the current Oakland facility cease operations, within ten (10) calendar days of it beginning operations;

b. Defendant shall provide a copy of Exhibit B to all of Defendant's employees;

c. Defendant shall provide a copy of Exhibit B to all newly hired employees before or by the date said employee begins performing work for Defendant at its Oakland facility (or any future facility should the current Oakland facility cease operations).

15. Within ten (10) calendar days of the date that Defendant signs this Consent Judgment, Defendant shall post U.S. Department of Labor-approved posters regarding the minimum wage provision of the FLSA, in a prominent location at its Oakland facility (for example, near the facility's front door, near the dispatch window), and Defendant shall do the same at any future facility should the current Oakland facility cease operations within ten (10) calendar days of it beginning operations.  Copies of said posters are available for download and printing at:

http://www.dol.gov/whd/regs/compliance/posters/flsa.htm.

16. Within six (6) months of the date that Defendant signs this Consent Judgment, or as soon as thereafter practicable given Wage and Hour representatives' availability, Defendant shall permit representatives from Wage and Hour to conduct a training session for all employees at Defendant's Oakland facility (or any future facility should the current Oakland facility cease operations). Defendant's employees, including Guy Sanderson, Maria Banales, Ja'Quita Carter, Kelvin Pham, Tony Banales, Lavita Jackson, Sonia Pena, and Byron Trujillo shall also be present at said training, which shall be compensable time

for which employees shall receive pay. Topics to be covered by Wage and Hour during said training shall include, but are not limited to: minimum wage and recordkeeping provisions of the FLSA; specific considerations relating to misclassification in the port truck driving industry; and anti-retaliation provisions of the FLSA. Upon a determination by Wage and Hour representatives, said training may be followed by a confidential question and answer session between Wage and Hour representatives and Defendant's employees, during which time Defendant's non-driver employees are not present ("Q&A Session"). The Q&A Session shall also be compensable time for which employees shall receive pay.

17. Within ten (10) calendar days of the date that Defendant signs this Consent Judgment, Defendant shall implement a recordkeeping, retention, and inspection program as detailed below:

    a. All employees of Defendant at its Oakland facility (or any future facility should the current Oakland facility cease operations) shall record their work time in an accurate and timely manner, whether such recording be made through the use of a time clock, handwritten time records, or by other means ("Time Records"). Work time shall include, but is not necessarily limited to, time spent by individuals: hauling loads on behalf of Defendant, waiting in line at the Port of Oakland, waiting for dispatches, and conducting pre-trip and post-trip truck inspections.

    b. For each work week, Defendant shall sum each employee's Time Records to identify the time worked each day and each workweek per individual. Each pay period, Defendant shall prepare a statement of hours worked by each individual for each day, week and pay period ("Work Hours Summary"). Defendant shall have each individual review his or her Work

Hours Summary, write in corrections if necessary, and sign the Work Hours Summary.  Each Work Hours Summary shall contain a statement in English and Spanish indicating that:

> "**Your Employer must pay you for all hours worked, which includes all time that you are required to be on the Employer's premises and are not free from duties.  If you think your Employer has not paid you for all hours you worked, you can call the U.S. Department of Labor to make a confidential complaint at 1-866-4US-WAGE.**"

Immediately upon issuance and for two (2) years thereafter, Defendant shall maintain copies of all Work Hours Summary for inspection by the U.S. Department of Labor at any time and by any of Defendant's employees at any time.

18. Within six (6) months of the date that Defendant signs this Consent Judgment, Defendant shall obtain an audit of its compliance with the FLSA, and regulations issued under the FLSA, to be conducted by a third-party monitor who shall be a former Federal Judge with JAMS hired at Defendant's expense, the total cost of which shall not exceed $7,500.  The third-party monitor Judge will prepare a written report which summarizes the steps taken to complete the audit, and the findings of the audit as to Defendant's compliance with the FLSA.  In the event that the third-party monitor finds non-compliance with the FLSA, Defendant shall provide a copy of the written report to the Wage and Hour Division, United States Department of Labor, Attn: Susana Blanco, 90 Seventh Street, Suite 12-100, San Francisco, California, 94103.

a. The third-party monitor shall have the ability to communicate with Defendant's employees in their native language(s), or, shall be provided

with an interpreter as necessary at Defendant's expense.

b. Defendant shall cooperate in full with the third-party monitor, including providing the monitor access to the Shippers' facilities and yard, employees, and to payroll and time records.  Defendant shall also provide to the monitor the daily dispatch logs that show which Driver was assigned to each load or delivery – so that the monitor may ascertain whether or not Defendant has refused to provide work or diminishes work for any Drivers, and why.

c. If the third-party monitor finds violations of the FLSA, or regulations issued under the FLSA, that result in back wages due, Defendant shall pay the wages due within thirty (30) calendar days.

d. If the third-party monitor directs changes in Defendant's policies and/or procedures, or directs that Defendant take action to comply with the FLSA or regulations issued under the FLSA, Defendant shall do so.  The monitor may investigate and report incidents or allegations or complaints of retaliation to the employer.  If not resolved in a satisfactory manner, the monitor will report it to the U.S. Department of Labor.

e. The third-party monitor shall have the duty to conduct off-site interviews with Defendant's employees; such interviews, and other communications between employees and the third-party monitor may be kept confidential -- except as to authorized representatives of the U.S. Department of Labor -- at the option of each employee; and copies of all notes and interviews conducted by the monitor may be turned over to Wage and Hour, along with the audit report, if requested by Wage and Hour.

f. Discrimination or retaliation by Defendant against any employee for cooperating or communicating with the third-party monitor is prohibited to

the fullest extent of the law, as provided in 29 U.S.C. § 215(a)(3).

19. The filing, pursuit, and/or resolution of this proceeding with the filing of this Consent Judgment shall not act as, or be asserted as, a bar to any action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), as to any employee not named on the attached Exhibit A, nor as to any employee named on the attached Exhibit A for any period not specified herein for the back wage recovery provisions.

20. Each party shall bear all fees and other expenses (including court costs and attorney's fees) incurred by such party in connection with any stage of this proceeding.

21. IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this action for purposes of enforcing compliance with the terms of this Consent Judgment for five years.

**IT IS SO ORDERED.**



Dated:  November 17, 2014

_____

HONORABLE BEVERLY REID O'CONNELL
UNITED STATES DISTRICT COURT JUDGE

Presented by:

M. PATRICIA SMITH
Solicitor of Labor

JANET M. HEROLD
Regional Solicitor

SUSAN SELETSKY
FLSA Counsel

JEREMIAH E. MILLER
Senior Trial Attorney

Dated: 11-13-14

NATALIE NARDECCHIA
Trial Attorney

Dated: 11/13/14

On behalf of
Defendant Shippers Transport Express

Kyle Lukins
Vice President-General Counsel

Dated: 11/13/14

Jim McMullen
Counsel for Defendant

**CONSENT JUDGMENT & ORDER**                    **Page 20 of 33**

## Exhibit A

## Updated Driver List From August 20, 2009 to Present

1.  Mark Abney

     Section 6 Minimum Wage Violations:      $76.30

     Section 6 Liquidated Damages:      $76.30

     Reimbursements:      $247.92

     Reimbursement Liquidated Damages:      $247.92

     Total Owed:      $648.44

2.  Gerardo Azurdia

     Section 6 Minimum Wage Violation:      $258.66

     Section 6 Liquidated Damages:      $258.66

     Reimbursements:      $1,526.93

     Reimbursement Liquidated Damages:      $1,526.93

     Total Owed:      $3,571.18

3.  Ralph Bates

     Section 6 Minimum Wage Violation:      $392.92

     Section 6 Liquidated Damages:      $392.92

     Reimbursements:      $5,291.52

     Reimbursement Liquidated Damages:      $5,291.52

     Total Owed:      $11,368.88

4.  Sam Bowie

|  | Section 6 Minimum Wage Violation: | $260.48 |
|---|---|---|
|  | Section 6 Liquidated Damages: | $260.48 |
|  | Reimbursements: | $1,837.23 |
|  | Reimbursement Liquidated Damages: | $1,837.23 |
|  | Total Owed: | $4,195.42 |

5.   Tammany Brooks

|  | Section 6 Minimum Wage Violation: | $6.54 |
|---|---|---|
|  | Section 6 Liquidated Damages: | $6.54 |
|  | Reimbursements: | $614.56 |
|  | Reimbursement Liquidated Damages: | $614.56 |
|  | Total Owed: | $1,242.20 |

6.   William Cantrell

|  | Section 6 Minimum Wage Violation: | $469.72 |
|---|---|---|
|  | Section 6 Liquidated Damages: | $469.72 |
|  | Reimbursements: | $3,933.79 |
|  | Reimbursement Liquidated Damages: | $3,933.79 |
|  | Total Owed: | $8,807.02 |

7.   Omar Carrillo

|  | Section 6 Minimum Wage Violation: | $205.26 |
|---|---|---|
|  | Section 6 Liquidated Damages: | $205.26 |
|  | Reimbursements: | $2,643.97 |
|  | Reimbursement Liquidated Damages: | $2,643.97 |
|  | Total Owed: | $5,698.46 |

8.     Israel Chavez

    Section 6 Minimum Wage Violation:    $297.57

    Section 6 Liquidated Damages:    $297.57

    Reimbursements:    $1,342.63

    Reimbursement Liquidated Damages:    $1,342.63

    Total Owed:    $3,280.40

9.     Franklin Coello

    Section 6 Minimum Wage Violation:    $25.20

    Section 6 Liquidated Damages:    $25.20

    Reimbursements:    $1,342.63

    Reimbursement Liquidated Damages:    $1,342.63

    Total Owed:    $2,735.66

10.    Anthony Contares

    Section 6 Minimum Wage Violation:    $427.73

    Section 6 Liquidated Damages:    $427.73

    Reimbursements:    $4,403.91

    Reimbursement Liquidated Damages:    $4,403.91

    Total Owed:    $9,663.28

11.    Leon Davis

    Section 6 Minimum Wage Violation:    $156.98

    Section 6 Liquidated Damages:    $156.98

    Reimbursements:    $2,364.55

    Reimbursement Liquidated Damages:    $2,364.55

Total Owed:                                    $5,043.06

12.    Siu Eng

    Section 6 Minimum Wage Violation:       $64.77

    Section 6 Liquidated Damages:           $64.77

    Reimbursements:                         $444.42

    Reimbursement Liquidated Damages:       $444.42

    Total Owed:                             $1,018.38

13.    Jose Garcia

    Section 6 Minimum Wage Violation:       $788.38

    Section 6 Liquidated Damages:           $788.38

    Reimbursements:                         $2,063.13

    Reimbursement Liquidated Damages:       $2,063.13

    Total Owed:                             $5,703.02

14.    Xavier Gillete

    Section 6 Minimum Wage Violation:       $1,718.83

    Section 6 Liquidated Damages:           $1,718.83

    Reimbursements:                         $8,778.75

    Reimbursement Liquidated Damages:       $8,778.75

    Total Owed:                             $20,995.16

15.    Lemuel Hardaway

    Section 6 Minimum Wage Violation:       $14.82

    Section 6 Liquidated Damages:           $14.82

    Reimbursements:                         $661.58

|  | | |
|---|---|---|
| | Reimbursement Liquidated Damages: | $661.58 |
| | Total Owed: | $1,352.80 |

16. Thon Kloak

| | Section 6 Minimum Wage Violation: | $155.72 |
|---|---|---|
| | Section 6 Liquidated Damages: | $155.72 |
| | Reimbursements: | $1,784.04 |
| | Reimbursement Liquidated Damages: | $1,784.04 |
| | Total Owed: | $3,879.52 |

17. Nhan Trung Le

| | Section 6 Minimum Wage Violation: | $153.42 |
|---|---|---|
| | Section 6 Liquidated Damages: | $153.42 |
| | Reimbursements: | $1,082.30 |
| | Reimbursement Liquidated Damages: | $1,082.30 |
| | Total Owed: | $2,471.44 |

18. Peter Lee

| | Section 6 Minimum Wage Violation: | $421.73 |
|---|---|---|
| | Section 6 Liquidated Damages: | $421.73 |
| | Reimbursements: | $338.35 |
| | Reimbursement Liquidated Damages: | $338.35 |
| | Total Owed: | $1,520.16 |

19. Oscar Marmol

| | Section 6 Minimum Wage Violation: | $1,088.27 |
|---|---|---|
| | Section 6 Liquidated Damages: | $1,088.27 |

| | |
|---|---|
| Reimbursements: | $5,124.63 |
| Reimbursement Liquidated Damages: | $5,124.63 |
| Total Owed: | $12,425.80 |

20.  Hernando Martinez

| | |
|---|---|
| Section 6 Minimum Wage Violation: | $198.56 |
| Section 6 Liquidated Damages: | $198.56 |
| Reimbursements: | $1,929.91 |
| Reimbursement Liquidated Damages: | $1,929.91 |
| Total Owed: | $4,256.94 |

21.  Marcelino Matias

| | |
|---|---|
| Section 6 Minimum Wage Violation: | $52.20 |
| Section 6 Liquidated Damages: | $52.20 |
| Reimbursements: | $1,321.32 |
| Reimbursement Liquidated Damages: | $1,321.32 |
| Total Owed: | $2,747.04 |

22.  Urbain Mekoyo

| | |
|---|---|
| Section 6 Minimum Wage Violation: | $174.26 |
| Section 6 Liquidated Damages: | $174.26 |
| Reimbursements: | $2,449.10 |
| Reimbursement Liquidated Damages: | $2,449.10 |
| Total Owed: | $5,246.72 |

23.  Jamie B. Nunez

| | |
|---|---|
| Section 6 Minimum Wage Violation: | $188.12 |

|  | Section 6 Liquidated Damages: | $188.12 |
|--|--|--|
|  | Reimbursements: | $1,447.80 |
|  | Reimbursement Liquidated Damages: | $1,447.80 |
|  | Total Owed: | $3,271.84 |

24.   Herbert Olivares

|  | Section 6 Minimum Wage Violation: | $77.94 |
|--|--|--|
|  | Section 6 Liquidated Damages: | $77.94 |
|  | Reimbursements: | $1,321.85 |
|  | Reimbursement Liquidated Damages: | $1,321.85 |
|  | Total Owed: | $2,799.58 |

25.   Sebastian Padilla

|  | Section 6 Minimum Wage Violation: | $58.52 |
|--|--|--|
|  | Section 6 Liquidated Damages: | $58.52 |
|  | Reimbursements: | $1,119.58 |
|  | Reimbursement Liquidated Damages: | $1,119.58 |
|  | Total Owed: | $2,356.20 |

26.   Alan Pelley

|  | Section 6 Minimum Wage Violation: | $121.95 |
|--|--|--|
|  | Section 6 Liquidated Damages: | $121.95 |
|  | Reimbursements: | $1,762.62 |
|  | Reimbursement Liquidated Damages: | $1,762.62 |
|  | Total Owed: | $3,769.14 |

27.    Armando Perez

     Section 6 Minimum Wage Violation:     $294.25

     Section 6 Liquidated Damages:     $294.25

     Reimbursements:     $5,113.87

     Reimbursement Liquidated Damages:     $5,113.87

     Total Owed:     $10,816.24

28.    Justin Phan

     Section 6 Minimum Wage Violation:     $617.47

     Section 6 Liquidated Damages:     $617.47

     Reimbursements:     $2,590.39

     Reimbursement Liquidated Damages:     $2,590.39

     Total Owed:     $6,415.72

29.    Zharman Prior

     Section 6 Minimum Wage Violation:     $190.02

     Section 6 Liquidated Damages:     $190.02

     Reimbursements:     $902.67

     Reimbursement Liquidated Damages:     $902.67

     Total Owed:     $2,185.38

30.    John M. Puerta

     Section 6 Minimum Wage Violation:     $246.87

     Section 6 Liquidated Damages:     $246.87

     Reimbursements:     $1,197.80

     Reimbursement Liquidated Damages:     $1,197.80

**CONSENT JUDGMENT & ORDER**     

Total Owed:                                    $2,889.34

31.   Jose Rodriguez

    Section 6 Minimum Wage Violation:          $43.05

    Section 6 Liquidated Damages:              $43.05

    Reimbursements:                            $1,325.78

    Reimbursement Liquidated Damages:          $1,325.78

    Total Owed:                                $2,737.66

32.   Orlando Sanchez

    Section 6 Minimum Wage Violation:          $419.59

    Section 6 Liquidated Damages:              $419.59

    Reimbursements:                            $5,729.42

    Reimbursement Liquidated Damages:          $5,729.42

    Total Owed:                                $12,298.02

33.   Dwayne Smith

    Section 6 Minimum Wage Violation:          $140.71

    Section 6 Liquidated Damages:              $140.71

    Reimbursements:                            $3,755.86

    Reimbursement Liquidated Damages:          $3,755.86

    Total Owed:                                $7,793.14

34.   Carlos Suarez

    Section 6 Minimum Wage Violation:          $141.24

    Section 6 Liquidated Damages:              $141.24

    Reimbursements:                            $650.94

Reimbursement Liquidated Damages:	$650.94

Total Owed:	$1,584.36

35.	Thomas J. Templin

Section 6 Minimum Wage Violation:	$183.88

Section 6 Liquidated Damages:	$183.88

Reimbursements:	$1,568.44

Reimbursement Liquidated Damages:	$1,568.44

Total Owed:	$3,504.64

36.	Carletta Todd-Reed

Section 6 Minimum Wage Violation:	$162.17

Section 6 Liquidated Damages:	$162.17

Reimbursements:	$1,698.85

Reimbursement Liquidated Damages:	$1,698.85

Total Owed:	$3,722.04

37.	Johnny Tran

Section 6 Minimum Wage Violation:	$269.36

Section 6 Liquidated Damages:	$269.36

Reimbursements:	$690.81

Reimbursement Liquidated Damages:	$690.81

Total Owed:	$1,920.34

38.	Amanaki Veamatahau

Section 6 Minimum Wage Violation:	$24.03

Section 6 Liquidated Damages:	$24.03

Reimbursements:                          $1,302.30

Reimbursement Liquidated Damages:        $1,302.30

Total Owed:                              $2,652.66

**Exhibit B**

**LEGAL NOTICE TO ALL EMPLOYEES**

The United States Department of Labor conducted an investigation of Shippers
Transport Express ("Shippers") and has determined that drivers who haul loads on behalf
of Shippers ("you"), were misclassified as "independent contractors," and should instead
have been treated as "employees" because your work is controlled by Shippers and you
are not independent business people.  Some employers improperly classify employees as
independent contractors so that the employers can avoid giving benefits to employees
and can avoid paying payroll taxes.

In a settlement with the United States Department of Labor, Defendant has
voluntarily agreed to properly classify all drivers who haul or have hauled loads from
Shippers from August 20, 2009 through the present as employees, rather than as
independent contractors, to pay the back wages and liquidated damages owed to you,
and to take other steps to ensure that all employees are paid properly under the Fair
Labor Standards Act ("FLSA").

Among other things, the FLSA provides that all employees must be paid
**minimum wage** for all hours worked.  The FLSA also provides that **all employees are
protected from retaliation or discrimination**.  This means that **no one** from Shippers,
including Guy Sanderson, Tony Banales, Kelvin Pham, Maria Banales, or Ja'Quita
Carter can terminate you, threaten to terminate you, reduce your work or your pay, or in
any way retaliate or discriminate against you because you have spoken to anyone at the
Department of Labor, testified in this case, or in any way tried to enforce your rights
under the FLSA.

**The United States Department of Labor wants to remind you that you may
contact the Department if you have any question about your employment situation,
such as your classification as an employee (versus independent contractor) and**

**your rights to lawful wages and to be free from retaliation.**

**If you think you are not being paid in accordance with the law, you can call the United States Department of Labor, Wage and Hour Division, at (415) 625-7720 or 1-866-4-USWAGE (1-866-487-9243), and your name will be kept confidential.**

The Department wants to remind you that you also have employment rights under California state law and you may contact the California Division of Labor Standards Enforcement, at (415) 703-5300, for any questions you may have about those rights.